EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| R & G Mortgage Corporation<br><br>Recurrida<br><br>v.<br><br>Francisco Sustache Rivera<br><br>Peticionario | Certiorari<br><br>2004 TSPR 202<br><br>163 DPR _____ |

Número del Caso: CC-2002-869

Fecha: 14 de diciembre de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional VI

Panel integrado por su Presidenta, la Juez Pesante Martínez, y los Jueces Rodríguez García y Salas Soler

Abogado de la Parte Peticionaria:

Lcdo. Juan A. Santos Berríos

Abogado de la Parte Recurrida:

Lcdo. José A. Pérez Ferrari

Materia: Ejecución de Hipoteca

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

R & G Mortgage Corporation

    Recurrida

        v.                      CC-2002-869

Francisco Sustache Rivera

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 14 de diciembre de 2004

Nos corresponde en esta ocasión expresarnos sobre las enmiendas introducidas a la Regla 51.8 (a) de Procedimiento Civil —sobre venta judicial— por la Ley 172 de 12 de agosto de 2000, 32 L.P.R.A. Ap. III, R. 51.8(a). Específicamente, sobre el alcance del requerimiento de notificación del aviso de venta judicial a "la última dirección conocida" del deudor demandado cuando éste no ha comparecido. Y si es suficiente, para cumplir con las exigencias del debido proceso de ley, que la notificación se haga por correo certificado con acuse de recibo a la dirección residencial donde el demandado fue emplazado, aun cuando la carta

fuese devuelta por el servicio postal de correo por insuficiencia en la dirección o dirección desconocida.

## I.

El 6 de agosto de 2001, R & G Mortgage Corporation ("R & G") demandó a los esposos Francisco Sustache Rivera y Engracia Sustache Morales, y la sociedad de bienes gananciales compuesta por ambos, en una acción de ejecución de hipoteca por la vía ordinaria. La dirección de la propiedad objeto de la demanda, según consta en la copia del pagaré hipotecario correspondiente, es: "Road 901 KM 3 HM 1, Parcela # 2, Juan Martín Ward, Yabucoa, Puerto Rico."

De acuerdo con los hechos que encontró probados el Tribunal de Apelaciones, R & G diligenció el emplazamiento[1] personalmente al peticionario, señor Sustache, por sí y en representación de la sociedad legal de gananciales compuesta con su esposa Engracia, a la siguiente dirección: "Carretera

---

[1] El señor Sustache ha alegado consistentemente, que su esposa nunca fue emplazada y que por lo tanto, el Tribunal de Primera Instancia nunca adquirió jurisdicción sobre ella ni sobre la sociedad legal de gananciales. El Tribunal de Apelaciones consideró probado el emplazamiento del señor Sustache. De los dos formularios de emplazamiento que constan en el apéndice, no obstante, el único que fue juramentado es aquel del que surge que la persona emplazada fue la señora Sustache, por sí y en representación de la sociedad legal de gananciales. Véase, apéndice del recurso de certiorari, pág. 18. En ese sentido, entendemos que, de acuerdo con el expediente ante nos, tanto la señora Sustache como la sociedad legal de gananciales fueron debidamente emplazadas. *Vega v. Bonilla*, res. 12 de marzo de 2001, 153 D.P.R. ___ (2001), 2001 TSPR 35, 2001 JTS 38; *Blás v. Hosp. Guadalupe*, 146 D.P.R. 267 (1998); *Pauneto v. Núñez*, 115 D.P.R. 591 (1984).

901 KM 3.1, Bo. Juan Martín, Yabucoa, P.R.". Los demandados no contestaron la demanda. Transcurrido el término para contestar la demanda R & G solicitó que se dictara sentencia en rebeldía. Dicha moción fue notificada por R & G a la siguiente dirección: "2 RD 901 KM 3.1 Bo. Juan Martín, Yabucoa, Puerto Rico 00767". R & G alega que la misma no fue devuelta.

El 3 de octubre de 2001 el Tribunal de Primera Instancia dictó sentencia en rebeldía. La secretaría del tribunal notificó copia de la sentencia al señor Sustache, a su esposa y a la sociedad legal de gananciales a la siguiente dirección: "BO Juan Martín Carretera 2 901 KM 3 1 Yabucoa, PR 00767". Esta notificación, según consta en el expediente del Tribunal de Primera Instancia y según admitió R & G, fue devuelta por el servicio de correos, con un sello indicativo de que la dirección era insuficiente[2].

Así las cosas, R & G solicitó la ejecución de la sentencia. El Tribunal de Primera Instancia ordenó la ejecución y la venta en pública subasta de la propiedad y emitió el mandamiento correspondiente. El 8 de mayo de 2002,

---

[2]    La notificación de la sentencia se llevó a cabo conforme dispone la Regla 65.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R.65.3.  En este caso la parte demandada fue emplazada personalmente y optó por no presentar alegación responsiva alguna oponiéndose al remedio solicitado ni comparecer ante el tribunal *a quo*.  Ante estos hechos, procedía que el tribunal de instancia notificara la sentencia dictada a la dirección que constaba en autos, como en efecto se hizo.  Véase *Falcón Padilla* v. *Maldonado Quirós*, 138 D.P.R. 983 (1995).

se celebró la subasta, compareciendo R & G como único postor y adjudicándosele la propiedad.

Según consta en el acta de la subasta, el aviso o edicto de subasta fue notificado a los demandados mediante correo certificado con acuse de recibo "a la última dirección conocida". El acta fue acompañada, entre otros documentos, con la declaración jurada de la persona que hizo la notificación por correo, de donde se desprende que la copia del edicto había sido enviada a los dos demandados individualmente, a una misma dirección: "Bo. Juan Martín, 2RD. 901 KM 3.1, Yabucoa, PR 00767".

El 7 de junio de 2002, el señor Sustache presentó una moción mediante la cual solicitó la nulidad de la venta judicial celebrada. Alegó, que R & G no cumplió con lo dispuesto por la Regla 51.8(a) de Procedimiento Civil porque no le notificó el edicto a la última dirección conocida. Indicó que, según surgía del expediente del foro *a quo*, la notificación enviada a los demandados fue devuelta por el sistema de correo con un sello indicativo de que la dirección era incorrecta o insuficiente.

Alegó el señor Sustache, además, que "la última dirección conocida" a la que R & G debió haber enviado la copia del edicto era su dirección postal: "P.O. Box 1358, Yabucoa, Puerto Rico 00767". Explicó que esa era la dirección postal a la que R & G le cursaba las notificaciones durante toda la relación contractual entre ellos. Como prueba incluyó, entre otros documentos, copia de la libreta

de pagos de la hipoteca y del estado del préstamo hipotecario.

R & G contestó la moción y argumentó que envió la notificación del edicto a la misma dirección donde había emplazado a los esposos Sustache —"Carretera 901, Km. 3.1, Sector Juan Martín de Yabucoa, Puerto Rico"— y que ésa era la última dirección conocida por ellos. El Tribunal de Primera Instancia, sin celebrar una vista al respecto, denegó la solicitud de nulidad de venta judicial presentada por el señor Sustache.

Inconforme con esa determinación, el señor Sustache acudió ante el Tribunal de Apelaciones. Argumentó que erró el Tribunal de Primera Instancia al no anular la venta, pues la falta de notificación de la subasta a la dirección correcta infringía las disposiciones del debido proceso de ley. Señaló además que el foro *a quo* debió haber celebrado una vista para dilucidar el asunto a tenor con las disposiciones de la Regla 51.8(a).

R & G se opuso a la expedición del auto. Alegó, que la notificación por correo a la dirección física de los esposos Sustache —donde éstos admitían que estaba su residencia— cumplía con las disposiciones de la Regla 51.8(a), y con el debido proceso de ley. Argumentó, además, que la dirección postal era, en todo caso, una "segunda dirección conocida" y que bastaba con notificar a "una de dos" direcciones conocidas.

El Tribunal de Apelaciones denegó la expedición del recurso.[3] Entendió el foro apelativo intermedio que R & G había enviado la notificación al señor Sustache a la misma dirección donde lo habían emplazado y donde la secretaría del Tribunal de Primera Instancia le había notificado la sentencia.

Nuevamente inconforme, el señor Sustache acude ante nosotros. Señala los siguientes errores:

> Cometió error el Honorable Tribunal de Circuito de Apelaciones al resolver que se cumplió con la Regla 51.8 de las de Procedimiento Civil vigentes sin considerar las enmiendas a dicha sección de la ley introducidas por la Ley 172 de 12 de agosto de 2000.

> Cometió error el Honorable Tribunal de Circuito de Apelaciones al negarse a interpretar que la notificación a una dirección postal incorrecta e insuficiente no cumple con los requisitos de notificación de la Regla 51.8 máxime cuando se tiene y conoce la dirección postal correcta y suficiente del demandado-peticionario; y al negarse a resolver que al notificar de la forma en que se hizo en este caso se violó el derecho constitucional al debido proceso del demandado-peticionario.

El 31 de enero de 2003 expedimos el auto solicitado. Con el beneficio de los alegatos de las partes, estamos en posición de resolver.

II

La Regla 51.8 de Procedimiento Civil, establece los requisitos procesales para la validez de las ventas

---

[3] El foro apelativo, inexplicablemente, basó su determinación en el texto de la Regla 51.8(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 51.8(a), previo a la adopción de la Ley 172 de 12 de agosto de 2000.

judiciales. El inciso (a) de dicha regla establece las disposiciones relacionadas con el aviso —es decir, la notificación y publicidad— de la venta a realizarse. El texto de la Regla 51.8(a),[4] fue enmendado, como hemos indicado, por la Ley 172 de 12 de agosto de 2000. Tenemos ocasión ahora de interpretar por primera vez, la nueva exigencia de notificación por correo certificado con acuse de recibo a la "última dirección conocida" del deudor demandado que no ha comparecido al pleito, insertada en la Regla 51.8 por la

---

[4]    El texto de la Regla 51.8(a) anterior a la enmienda disponía, en lo pertinente:

*Regla 51.8 Ventas judiciales*

a. Aviso de venta. Antes de verificarse la venta de los bienes objeto de la ejecución, deberá publicarse la misma por espacio de dos (2) semanas mediante avisos por escrito visiblemente colocados en tres sitios públicos del municipio en que ha de celebrarse dicha venta, tales como la alcaldía, el tribunal y la colecturía. Se publicará, además, dicho aviso en la colecturía y en escuela pública del lugar de la residencia del demandado cuando ésta fuera conocida, o en un diario de circulación general en el Estado Libre Asociado de Puerto Rico, por espacio de dos (2) semanas y por lo menos una vez por semana. El aviso de venta describirá adecuadamente los bienes a ser vendidos y se referirá sucintamente además, a la sentencia a ser satisfecha mediante dicha venta, con expresión del sitio, día y hora en que habrá de celebrarse la venta. Si los bienes fueren susceptibles de deterioro, el tribunal, a solicitud de parte, podrá reducir el término de publicación del aviso a menos de dos (2) semanas. Será nula toda venta judicial que se realice sin dar cumplimiento al aviso de venta en la forma indicada, sin perjuicio de la responsabilidad de la parte que promoviere la venta sin cumplir con tal aviso.

32 L.P.R.A. Ap. III, R. 51.8 (Sup. 2000).

Ley 172.  En esencia, debemos resolver qué notificación es suficiente, en la etapa de post sentencia, para cumplir con los rigores del debido proceso de ley.  Véase discusión *infra*.

En el pasado, habíamos tenido ocasión de expresarnos sobre el alcance de la anterior Regla 51.8(a).[5]  Véanse, *Arroyo v. Ortiz y Franco*, 133 D.P.R. 62 (1993); *Lincoln Savs. Bank v. Figueroa*, 124 D.P.R. 388 (1989); *C.R.U.V. v. Registrador*, 117 D.P.R. 662 (1986); *Dapena Quiñones v. Vda. de Del Valle,* 109 D.P.R. 138 (1979). Conforme lo resuelto, hemos reconocido que la Regla 51.8(a), establece dos requisitos de notificación; cada uno de los cuales responde a finalidades distintas.

El primer requisito —que el aviso debe publicarse en tres lugares públicos del municipio en que ha de llevarse a cabo la venta judicial— tiene el propósito de lograr que el mayor número de compradores potenciales acuda a la venta judicial. Se logra así una competencia adecuada en el precio y se evita que la venta sea por un precio irrazonable, en perjuicio del dueño. *C.R.U.V. v. Registrador*, *supra*.

El segundo requisito de la Regla 51.8 (a) tiene como propósito darle notificación al demandado contra quien se ejecuta la sentencia de la celebración de la venta judicial. Antes de la aprobación de la Ley 172, este segundo requisito

---

[5]    Con anterioridad a la aprobación de las Reglas de Procedimiento Civil de 1979, el aviso de venta judicial se regía por el Art. 251 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1132.

sólo exigía que, cuando se conociera el lugar de residencia del demandado, se colocara el aviso en la colecturía y en la escuela pública del lugar. En los casos en que no se conociera la dirección residencial del demandado, la regla exigía que se publicara el aviso en un diario de circulación general. *C.R.U.V. v. Registrador*, *supra*. El texto de la regla no proveía para ningún tipo de notificación por correo. La Ley 172 trajo cambios sustanciales a esta regla, entre otras cosas, al ordenar por primera vez la notificación post sentencia al deudor demandado del aviso de subasta por correo certificado. Veamos.

La Regla 58.1 (a), según enmendada, dispone en lo pertinente:

> (a) Aviso de venta.—Antes de verificarse la venta de los bienes objeto de la ejecución, deberá publicarse la misma por espacio de dos (2) semanas mediante avisos por escrito visiblemente colocados en tres (3) sitios públicos del municipio en que ha de celebrarse dicha venta, tales como la alcaldía, el tribunal y la colecturía. Se publicará, además, dicho aviso en la colecturía del lugar de residencia del demandado, cuando ésta fuera conocida. Dicho aviso será publicado mediante edicto dos (2) veces en un diario de circulación general en Puerto Rico, y por espacio de dos (2) semanas consecutivas con un intervalo de por lo menos siete (7) días entre ambas publicaciones. **Además, en aquellos casos en que el demandado contra quien se ejecuta la sentencia ha comparecido al pleito, el promovente de la ejecución deberá notificar a dicho demandado vía correo certificado con acuse de recibo. En los casos en que el demandado no ha comparecido, la notificación será vía correo certificado con acuse de recibo a la última dirección conocida.**
>
> En todos los casos en que se plantee que la parte promovente de un procedimiento de ejecución de sentencia no ha cumplido con alguno de los requisitos de esta regla, el tribunal, a solicitud

de parte, **celebrará** una vista para resolver la controversia planteada. (Énfasis nuestro.)

La Ley 172 alteró significativamente el requisito de notificación al deudor demandado en toda venta judicial. La enmienda a la regla hace obligatoria la publicación del aviso en un periódico de circulación general. Bajo la regla anterior, sólo era necesario la publicación en el periódico si se desconocía la dirección del demandado; ahora es obligatorio en todos los casos.

En segundo lugar, y de mayor importancia, con la nueva ley se hizo obligatoria la notificación por correo certificado con acuse de recibo a todo deudor demandado. Así, si ese demandado había comparecido al pleito y por lo tanto se conoce su dirección, se le enviará el aviso por correo certificado con acuse de recibo a esa dirección. Si el demandado no hubiese comparecido, se enviará el aviso a la última dirección conocida, también por correo certificado con acuse de recibo.

Un examen del historial legislativo de la Ley 172, así como de su exposición de motivos, pone de manifiesto la clara intención del legislador al aprobar la ley, de cumplir con los rigores del debido proceso de ley ampliando las exigencias de notificación post sentencia. Cuyo propósito, según nos informa el legislador, era proveer una notificación al deudor que "no solo . . . su propiedad ha sido embargada, sino también de las exenciones pertinentes y los medios

disponibles para reclamarlas."[6]   En el texto del proyecto original, se había limitado el requisito de notificación únicamente "al deudor por sentencia . . . siempre que hubiese comparecido al pleito".[7]  En la redacción del texto final, no obstante, se ampliaron las disposiciones de la regla para también exigir la notificación por correo certificado al deudor por sentencia que no hubiera comparecido al pleito. Se añadió, además, el requisito de la celebración de una vista obligatoria cuando se cuestionara que la parte promovente no había cumplido con los requisitos establecidos por la Regla 51.8 (a).[8]

Los requisitos de publicación y notificación enumerados en esta regla son requerimientos del debido proceso de ley. *Lincoln Savs. Bank v. Figueroa*, *supra*; *C.R.U.V. v. Registrador*, *supra*. Por ello, no publicar el aviso de venta en la forma indicada en la ley o incurrir en otros vicios o defectos sustanciales, trae como consecuencia, la nulidad de la subasta. Véanse, *Atanacia Corp. v. J. M. Saldaña, Inc.*, 133 D.P.R. 284 (1993); *Lincoln Savs. Bank v. Figueroa*, *supra*; *Dapena Quiñónez v. Vda. de Del Valle*, *supra*.

---

[6]    Exposición de motivos de la Ley 172, Leyes y Resoluciones de Puerto Rico, 2000, Parte 2, pág. 1160.

[7]    El texto originalmente propuesto por el P. de la C. 3052 coincidía, esencialmente, con las recomendaciones del Informe de Reglas de Procedimiento Civil, Propuesta del Comité Asesor Permanente de las Reglas de Procedimiento Civil a la Decimonovena Sesión Plenaria de la Conferencia Judicial de Puerto Rico, de febrero de 1996.

[8]    Véase, historial legislativo del P. de la C. 3052 (Ley 172), en particular, el informe sometido por la Comisión de lo Jurídico del Senado.

Además, hemos resuelto que cuando se trata de una venta judicial, no existe una presunción a favor de que todo se ha hecho en forma adecuada por el alguacil. *C.R.U.V. v. Registrador, supra.* En la etapa post sentencia del procedimiento ordinario de ejecución de hipoteca, como el caso de autos, el ordenamiento ha dispuesto de una injerencia limitada del tribunal quedando el proceso en manos, sustancialmente, del acreedor hipotecario y el alguacil del tribunal. *Atanacia, supra.*

A la luz de lo anterior, al analizar el requisito de notificación por correo certificado con acuse de recibo a la última dirección conocida del deudor demandado, debemos hacerlo de forma tal que se cumpla con rigurosidad con las exigencias del debido proceso de ley. Es decir, que la notificación sea adecuada para informar al deudor de los procedimientos que pueden afectar su interés propietario.

Veamos entonces con detenimiento, qué requiere el debido proceso, particularmente en la etapa post sentencia, y cómo este tema se ha atendido en la jurisdicción norteamericana.

**III.**

La controversia ante nosotros, sobre el requisito de notificación por correo a la última dirección conocida del deudor, plantea un problema de debido proceso de ley en su dimensión procesal. Evidentemente, para que una persona pueda invocar la protección del debido proceso de ley en su vertiente procesal, tiene que existir un interés individual de libertad o propiedad. *U. Ind. Emp. A.E.P. v. A.E.P.,* 146

D.P.R. 611 (1998); *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 265 (1987). Cumplida esta exigencia, es preciso determinar entonces cuál es el procedimiento exigido ("*what process is due*"). *U. Ind. Emp. A.E.P. v. A.E.P.*, *supra*; *Rivera Santiago v. Secretario de Hacienda*, *supra*; *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1984); *Morrissey v. Brewer*, 408 U.S. 471 (1972). Distintas situaciones pueden requerir diferentes tipos de procedimientos. *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 562 (1992). Lo importante, no obstante, es que el procedimiento tiene que ser uno justo y equitativo. *Rivera Rodríguez & Co. v. Lee Stowell, Etc.*, 133 D.P.R. 881 (1993); *Orta v. Padilla Ayala*, 131 D.P.R. 227 (1992). Entre los componentes básicos del debido proceso de ley que hacen que el proceso sea uno justo y equitativo, se encuentran el derecho a recibir una notificación adecuada y a tener la oportunidad de ser escuchado y de defenderse. *U. Ind. Emp. A.E.P. v. A.E.P.*, *supra.*

El debido proceso de ley no es una garantía estática e inmutable sino todo lo contrario. Varía y se conforma a las nuevas situaciones que confronta ampliando así su esfera de influencia. Así, las exigencias del debido proceso de ley en los procedimientos pre sentencia, han exigido una reevaluación del alcance de la garantía constitucional en la etapa post sentencia.[9] Veamos muy someramente.

---

[9] Sobre el alcance del debido proceso de ley en la etapa pre-sentencia, véanse, *Connecticut v. Doehr*, 501 U.S. 1

En *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, (1950), por ejemplo, el Tribunal Supremo de los Estados Unidos establece cuáles son los requisitos para el cumplimiento del debido procedimiento de ley cuando se intenta emplazar. Indicó el tribunal:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is **notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.**
>
>     . . .
>
> But when notice is a person's due*, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected,* or, *where conditions do not reasonably permit such notice,* that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes. (Citas omitidas y énfasis nuestro.)

*Mullane v. Central Hanover Trust Co.*, 339 U.S. págs. 314-15.

El Tribunal Supremo reconoció que aun cuando la notificación personal es la forma clásica de emplazar, hay ocasiones en que esto no es posible o práctico. En estas circunstancias el diligenciamiento constructivo es la única forma viable, como lo es la notificación por edicto. El

---

(1991); *North Georgia v. Di-Chem, Ins.*, 407 U.S. (1975); *Fuentes v. Shelvin*, 407 U.S. 337 (1972); *Snidach v. Family Corp.*, 305 U.S. 337 (1969).

tribunal determinó además que, cuando se conociera y se tuviera en los expedientes los nombres y direcciones de las personas afectadas, o cuando sus señas pudiesen obtenerse con la debida diligencia ("due diligence"), el debido proceso de ley requería que se les notificara individualmente del proceso aunque fuese por correo regular. *Mullane, supra,* pág. 318.

Luego, en *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), construyendo sobre *Mullane*, el tribunal determinó que en casos de subasta judicial por deuda de contribuciones debía notificarse, además de al dueño de la propiedad, a toda aquella persona cuyo interés propietario estuviese en juego — como era, en ese caso, el acreedor hipotecario. A éste no se le había enviado ningún tipo de comunicación, excepto la publicación de un edicto en el periódico, a pesar de que su nombre y dirección podían ser razonablemente determinados ("*reasonably ascertainable*"), porque constaban en los expedientes públicos. "When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service". *Mennonite Board of Missions v. Adams*, *supra*, pág. 798.

En los estados se ha seguido similar criterio. En *Prisco v. County of Greene*, 289 Ad. 2d 681 (N.Y.A.D. 2001), por ejemplo, el tribunal apelativo dejó sin efecto una venta judicial efectuada por el condado por la falta de pago de

contribuciones sobre la propiedad. El condado tenía en sus expedientes el nombre y la dirección correcta del hijo del deudor quien, previamente, había informado al condado su disposición de asumir el pago de las contribuciones. Según determinó el tribunal, el condado no cumplió con su deber de proveer una notificación adecuada, cuando no notificó al hijo al recibir devueltas las notificaciones de la ejecución enviada a los padres.

El tribunal apelativo reconoció que la agencia responsable de las contribuciones sobre la propiedad no estaba obligada a realizar esfuerzos extraordinarios para localizar a los dueños de la propiedad. El hecho de que la notificación enviada por correo hubiese sido devuelta por el servicio postal debió haber alertado a la agencia de la posibilidad de que no estuviese cumpliendo con los requisitos constitucionales del debido proceso de ley.

En *Federal Deposit Ins. Corp. v. Duerksen*, 810 P.2d 1308 (Okl. App. 1991), un tribunal apelativo determinó que se había violado el debido proceso de ley porque no se había notificado personalmente al deudor por sentencia, cuando la dirección de éste estaba en poder del banco hipotecario del cual era cliente hacía más de 40 años. Ello, a pesar de que en el momento de la venta judicial, la ley sólo exigía la publicación en el periódico. El tribunal determinó que el requisito estatutario no satisfacía el debido proceso de ley,

sobre todo cuando, como en ese caso, se conocía el paradero del demandado.[10]

A la luz de la discusión que antecede concluimos lo siguiente: Cuando se envíe el aviso de venta judicial a tenor con la Regla 51.8 (a), a un deudor demandado que no ha comparecido al pleito, la dirección a la que se le envíe tiene que estar razonablemente calculada, a la luz de las circunstancias particulares del caso, para darle una notificación efectiva de la venta y de cualquier derecho o exención que lo cobije. El promovente de la venta judicial deberá realizar los trámites necesarios, con cierto grado de esfuerzo, para procurar la dirección del deudor demandado al hacer la notificación. Ello no implica, sin embargo, que el promotor de la venta tenga que realizar esfuerzos extraordinarios.

Esto significa que, si en los expedientes del promotor de la venta judicial figuran más de una dirección del deudor y la notificación hecha conforme la Regla 51.8 es devuelta por el servicio de correo por insuficiencia de dirección, o por ser ésta desconocida, es necesario que el promotor notifique nuevamente a cualquier otra dirección que le conste en sus expedientes, y a la cual se hubiese cursado correspondencia anteriormente. De lo contrario, el error en

---

[10]   Véanse además, *Island Realty v. Babcoock Ventures, Inc.*, 867 So.2d 528 (Fla. App. 2004); *M & T Mortgage Corp. v. Keesler,* 826 A.2d 877 (Pa. 2003); *Farbotko v. Clinton County*, NY, 2003 WL 21303256 (N.D.N.Y.); *Kennedy v. Mossafa*, 759 N.Y.S.2d 429 (N.Y. 2003); *Tobila v. Town of Rockland*, 106 AD.2d 827 (N.Y.A.D. 1984).

la notificación es sustancial y la venta judicial efectuada será nula por no satisfacer el debido proceso de ley.

Advertimos que nuestra determinación en el caso de autos no implica que en un caso de venta judicial la parte promovente tenga que probar que el demandado recibió, efectivamente, la notificación enviada. Lo importante es que, al enviar el aviso "a la última dirección conocida del demandado", esa dirección tiene que ser razonablemente calculada, a la luz de las circunstancias del caso, como una en la cual el dueño demandado recibirá, efectivamente, el aviso de la venta.  Véanse, a modo de ejemplo y en el contexto de la Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.5:  *Lanzó Llanos v. Banco de la Vivienda*, 133 D.P.R. 507 (1993); *Chase Manhattan Bank v. Polanco Martínez*, 131 D.P.R. 530 (1992); *Rodríguez v. Nasrallah*, 118 D.P.R. 93 (1986).

Tiene que haber, por parte de las instituciones hipotecarias, un deseo de, efectivamente, querer informar al dueño de la inminencia de la venta judicial de la propiedad. Esto no se logra enviando —de una manera mecánica y sin mayor análisis— la notificación por correo certificado con acuse de recibo a una dirección física donde ese dueño fue emplazado, si esa correspondencia es devuelta por el sistema de correos por insuficiencia en la dirección.

En el caso de autos es posible que, al momento de enviar la notificación del edicto, R & G no fuera consciente de que la notificación de la sentencia había sido devuelta por el

servicio de correos.  Es posible también que, en ocasiones, la parte demandada hubiera recibido cierta correspondencia en la dirección física —la misma o una similar— a la que R & G le envió la notificación del edicto. Nada de esto altera nuestra determinación en esta sentencia. En primer lugar, porque, de acuerdo con los documentos en el expediente, cuando R & G sometió la declaración jurada el día de la subasta, tenía evidencia de que la notificación del edicto de subasta había sido devuelta por la dirección estar incorrecta, según el servicio postal.[11]  En segundo lugar, R & G tenía en sus expedientes la dirección postal del señor Sustache, a la cual había enviado correspondencia anteriormente que no había sido devuelta. Para R & G no constituía ningún esfuerzo extraordinario, sino, un mínimo de diligencia —ante la devolución del edicto de subasta enviado a la dirección física—, enviar nuevamente el edicto a la dirección postal que constaba ya en sus expedientes.  Por lo tanto, no es correcto el argumento esgrimido por R & G, que envió el aviso de la venta judicial a "una segunda dirección conocida" y con ello cumplía con la Regla 51.8; pues, de su

---

[11]   Además, los derechos de una persona cuyo interés propietario está en juego, no deben depender de la casualidad. Es de común conocimiento los esfuerzos realizados durante los últimos años por el Servicio Postal federal de automatizar los procesos de manejo y distribución de la correspondencia y el establecimiento de estándares más altos en la manera en que exigen se escriba la dirección. Normalmente, hoy en día, el servicio postal no va a entregar correspondencia que no esté correctamente dirigida.

propio expediente se desprendía que esa notificación fue ineficaz.

Como hemos indicado reiteradamente, una vez los remedios judiciales posteriores a una sentencia quedan recogidos en un estatuto, los mismos pasan a formar parte del debido proceso de ley, es su acepción procesal. *Hospital Dr. Domínguez, Inc. v. Ryder Memorial Hospital, Inc.*, res. el 4 de marzo de 2004, 161 D.P.R. ____, 2004 TSPR 35, 2004 JTS 44; *Falcón Padilla v. Maldonado Quirós*, 138 D.P.R. 983 (1995); *Arroyo Moret v. F.S.E.*, 113 D.P.R. 379 (1982); *Berríos v. Comisión de Minería*, 102 D.P.R. 228 (1974). La falta de una notificación oportuna y adecuada con posterioridad a la sentencia —al igual que en toda etapa del proceso judicial— afecta el derecho de la parte afectada a cuestionar el dictamen adverso, enervando así las garantías del debido proceso de ley. *Falcón Padilla v. Maldonado Quirós*, *supra*; *Berríos v. Comisión de Minería*, *supra*.

Por otro lado, ante las alegaciones presentadas por el señor Sustache, el Tribunal de Primera Instancia, debió celebrar una vista donde se dilucidara el asunto, a tenor con las disposiciones específicas de la Regla 51.8(a) que así lo exige. El texto de la regla es claro y mandatario.

Finalmente, y como ya hemos reconocido, es necesario proteger la integridad de los procedimientos de ejecución de hipoteca y venta judicial. "De otro modo, los intereses de aquellos con menos recursos pueden quedar a merced de las compañías que ofrecen préstamos garantizados por pagarés

hipotecarios, que de ordinario, cuentan con todos los medios necesarios para cobrar su acreencia." *Coop. Ahorro y Créd. v. Registrador*, 142 D.P.R. 369, 385 (1997).

## IV.

Por los fundamentos anteriormente expuestos, revocamos la resolución dictada por el Tribunal de Apelaciones y determinamos que fue nula la venta judicial llevada a cabo en el caso de epígrafe. Se devuelve el caso al Tribunal de Primera Instancia para que reinicie el proceso de subasta conforme los términos aquí dispuestos.

Lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López concurre con opinión escrita. El Juez Asociado señor Fuster Berlingeri concurre sin opinión escrita.

María I. Colón Falcón
Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

R & G Mortgage Corporation

    Recurrida

       vs.                                      CC-2002-869
Certiorari

Francisco Sustache Rivera

    Peticionario

OPINIÓN CONCURRENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico 14 de diciembre de 2004

A pesar de que concurrimos con el resultado al que llega en el presente caso una mayoría de los integrantes del Tribunal y de que reconocemos que la norma a la que se hace referencia en las páginas 16 y 17 de la Sentencia emitida está plasmada en términos que este Tribunal ha utilizado en decisiones anteriores, <u>no podemos brindarle nuestra conformidad a la ponencia mayoritaria debido a que somos del criterio que dichos términos resultan ser vagos e imprecisos</u>; situación que causa un enorme desasosiego en la profesión, lo cual tenemos la obligación de evitar.

I

Estamos contestes con el razonamiento de la Mayoría en cuanto a que la intención legislativa al aprobarse la Ley Núm. 172 de 12 de agosto de 2000, 32 L.P.R.A. Ap. III, R. 51.8(a), fue "cumplir con los rigores del debido proceso de ley ampliando las exigencias de notificación post sentencia". Coincidimos también con lo expresado en cuanto a que "al analizar el requisito de notificación por correo certificado con acuse de recibo a la última dirección conocida del deudor demandado, debemos hacerlo de forma tal que se cumpla con rigurosidad con las exigencias del debido proceso de ley. Es decir, que la notificación sea adecuada para informar al deudor de los procedimientos que puedan afectar su interés propietario".

Ahora bien, para fundamentar su posición, la Mayoría acude, por analogía, a las normas jurisprudenciales dictadas por este foro y por el Tribunal Supremo de los Estados Unidos respecto a las exigencias que, a la luz del debido proceso de ley, se le imponen a la parte interesada al diligenciar los emplazamientos. Véase Rodríguez v. Nasrallah, 118 D.P.R. 93 (1986); Mullane v. Central Hanover Bank & Tust Co., 339 U.S. 306 (1950). Conforme a ello, la Mayoría concluye que una notificación al amparo de la Regla 51.8(a), ante, debe enviarse a una dirección "razonablemente calculada, a la luz de las circunstancias particulares del caso" y que la misma debe "procurarse" "con cierto grado de esfuerzo".

¿Qué significa ello? ¿Cuál es la exigencia requerida al expresarse que la notificación debe ser enviada "a una dirección razonablemente calculada, a la luz de las circunstancias particulares del caso"? ¿Cuál es el "cierto grado de esfuerzo" en que la parte debe incurrir en la consecución de esa dirección?

II

A nuestra manera de ver las cosas, este Tribunal debe expresarse en términos más claros y precisos que los anteriormente reseñados. La Regla 51.8(a) debe interpretarse, siempre a la luz del debido proceso de ley, como una exigencia a la parte interesada en lograr la ejecución de su sentencia, de notificar a la parte demandada que no compareció al pleito. Al expresar, como lo hace la Mayoría, que la dirección a la que debe hacerse la notificación sea "razonablemente calculada, a la luz de las circunstancias particulares del caso" y que dicha dirección sea obtenida "con cierto grado de esfuerzo", <u>sin mayor explicación sobre su significado o alcance</u>, el Tribunal <u>no</u> cumple con su deber y obligación de establecer normas en nuestra jurisdicción <u>que sean claras y precisas</u>.

Somos del criterio que, en casos como el de autos, para que proceda la notificación al amparo de la Regla 51.8(a) el demandante debe demostrar, en <u>primer</u> lugar, que ejerció la <u>debida diligencia</u> para procurar la dirección del demandado. En <u>segundo</u> lugar, debe demostrar que la dirección a la cual

se pretende enviar la notificación es <u>aquélla que, dentro de un criterio de buena fe y razonabilidad, es la que con mayor probabilidad y certeza, conducirá a una notificación efectiva.</u>[12]

### III

En resumen, este Tribunal debe abstenerse de formular normas plagadas de imprecisión y vaguedad que, a fin de cuentas, sólo abonan a la incertidumbre entre nuestros jueces de instancia, los miembros del foro y el público en general. La laxitud de las opiniones judiciales contribuyen, ciertamente, a un estado de desasosiego que en nada promueve en nuestra jurisdicción "la seguridad jurídica, cuya uniformidad es eje de la ley". <u>Jack´s Beach Resort, Inc.</u> v. <u>Compañía de Turismo</u>, 112 D.P.R. 344, 350 (1982).

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[12] Así, por ejemplo, en el caso <u>Pou</u> v. <u>American Motors Corp.</u>, 127 D.P.R. 810, 820 (1991), al atender una controversia en cuanto al emplazamiento de una corporación foránea, establecimos el criterio de "razonable certeza" para asegurar una adecuada notificación a la corporación demandada.