ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **BANCO POPULAR DE PUERTO RICO**<br>DEMANDANTE(S)-PETICIONARIA(S)<br><br><br>V.<br><br><br>**ALL IN ONE MEDICAL SERVICES, INC. JOSEFINA LÓPEZ SÁNCHEZ, FULANO DE TAL Y SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTO**<br>DEMANDADA(S)-RECURRIDA(S) | **KLCE202201215** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm. **KCD2015-0386 (505)**<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 19 de agosto de 2024.

Comparece ante este Tribunal de Apelaciones, el **BANCO POPULAR DE PUERTO RICO** (**BPPR**) mediante *Recurso de Certiorari* incoado el 7 de noviembre de 2022. En su escrito, el **BPPR** nos solicita que revisemos la *Resolución* emitida el 3 de octubre de 2022 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[1] Mediante la referida *Resolución,* se declaró no ha lugar la *Solicitud de Determinación Judicial* presentada el 8 de junio de 2022 por el **BPPR**.[2] Ello fundamentado en que no procedía enmendar la *Orden de Confirmación de Venta Judicial* dictada el 3 de noviembre de 2017 ante el incumplimiento para con la Regla 51.7 (a) de las de Procedimiento Civil de 2009.

---

[1] Este dictamen judicial fue notificado y archivado en autos el 6 de octubre de 2022. Apéndice del *Recurso de Certiorari,* págs. 1- 2.
[2] *Íd.,* págs. 83- 90.

Número Identificador: SEN2024_____

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

- I -

Para el 10 de agosto de 2015, se dictaminó *Relación de Caso, Determinaciones de Hecho, Conclusiones de Derecho y Sentencia Parcial* (*Sentencia*) en la cual, entre otras cosas, se condenó a **ALL IN ONE MEDICAL SERVICES, INC.** y **JOSEFINA LÓPEZ SÁNCHEZ** al pago solidario de $617,281.95 de principal; en conformidad con la Regla 51.7 (a) de las de Procedimiento Civil de 2009, se ordenó proceder con la venta en pública subasta; y se desestimó, sin perjuicio, la reclamación en contra de **FULANO DE TAL Y SOCIEDAD LEGAL DE GANANCIALES.**[3]

Una vez advino final y firme la *Sentencia*, el **BPPR** promovió el proceso de su ejecución en virtud de la *Orden de Ejecución de Sentencia*. El 11 de julio de 2016, se tramitó el correspondiente *Mandamiento de Ejecución de Subasta* (*Mandamiento*) dirigido al Alguacil requiriéndole proceder con la subasta.[4] En cumplimiento con el mencionado *Mandamiento*, el 11 de agosto de 2016, la Oficina de Alguaciles cursó el *Aviso de Subasta* pautando la primera subasta para el 30 de noviembre de 2016 a las 10:15 de la mañana.[5] El *Aviso de Subasta* fue publicado en los siguientes lugares: la Alcaldía del Municipio de Caguas; el Tribunal de Primera Instancia, Sala Superior de Caguas, y en la Colecturía de Caguas. Ello en conformidad con la Regla 51.7 de las de Procedimiento Civil de 2009.[6] El *Aviso de Subasta* detalló que el precio mínimo para la primera subasta lo era la suma de $100,000.00; y el precio mínimo para la segunda subasta era la cuantía de $66,666.67.

El 30 de noviembre de 2016, se celebró la primera subasta, pero la misma fue declarada desierta y se procedió a cerrar la misma.[7] El 7 de

---

[3] Apéndice del *Recurso de Certiorari*, págs. 5- 16.
[4] *Id.*, págs. 17– 20.
[5] *Id.*, págs. 21– 24.
[6] 32 LPRA Ap. V, R. 51.7.
[7] *Id.*, págs. 38– 39.

diciembre de 2016, en la celebración de la segunda subasta, se le adjudicó la propiedad al **BPPR** (único postor). La señora Ivonne Benítez López, alguacil, otorgó el *Acta de Segunda Subasta*.[8] Al día siguiente, el 8 de diciembre de 2016, la señora Ivonne Benítez López, alguacil, y el **BPPR** suscribieron la escritura número 30 sobre *Venta Judicial* ante la notario Teresa Jiménez Meléndez.[9] En la aludida escritura, se puntualizó que el precio de la venta judicial del inmueble fue por la suma de $66,666.67. El 29 de noviembre de 2016, el **BPPR** presentó escrito intitulado *Al Expediente Judicial* acompañada de copia de varios documentos, entre ellos: misiva suscrita el 25 de octubre de 2016 dirigida a la licenciada María I. Torres Alvarado (representación legal); comunicación fechada el 25 de octubre de 2016 dirigida a la señora Sonia Guzmán (presidente de **ALL IN ONE MEDICAL SERVICES**) y señora **JOSEFINA LÓPEZ SÁNCHEZ;** *Affidávit* del periódico The San Juan Daily Star; edictos publicados; y *Declaración Jurada* del señor Julio Estrada Santana. Así las cosas, el 3 de noviembre de 2017, se decretó una *Orden de Confirmación de Adjudicación* en la cual se ratificó la venta en pública subasta y adjudicación del bien inmueble a favor de **BPPR**.[10]

Posteriormente, el 16 de julio de 2018, el **BPPR** e Interior Specialty Contractor Corporation otorgaron la escritura número 185 sobre *Compraventa* ante el notario Ricardo A. Vargas Valle.[11] El 29 de junio de 2017, el **BPPR** presentó la mencionada escritura ante el Registro de la Propiedad.[12]

El 16 de abril de 2021, el Registro de la Propiedad emitió *Carta de Notificación*.[13] Apuntó que la *Orden de Confirmación de Adjudicación* tenía un defecto de forma. Esto es, expresaba que el precio de venta fue por la cantidad

---

[8] Apéndice del *Recurso de Certiorari*, págs. 40– 41.
[9] *Id.*, págs. 42- 48.
[10] *Id.*, págs. 3- 4. Dicho documento, en lo pertinente, enuncia: "se ordena la confirmación de la venta en pública subasta y adjudicación de los bienes inmuebles que se describen a continuación a favor de la parte demandante, BANCO POPULAR DE PUERTO RICO, por las sumas licitadas de $20,000.00 para la propiedad localizada en San Juan, Puerto Rico ("A") y $100,000.00 para la propiedad localizada en Caguas, Puerto Rico ("B")"
[11] *Id.*, págs. 49– 61.
[12] *Id.*, págs. 62- 64.
[13] *Id.*, pág. 65.

de $100,000.00 cuando el *Acta de Segunda Subasta,* así como la escritura sobre *Venta Judicial* enuncian el importe por $66,666.67. Ante tal *Notificación* del Registro de la Propiedad, el 10 de junio de 2021, el **BPPR** procedió a solicitar una enmienda *nunc pro tunc* a la *Orden de Confirmación de Adjudicación* a los fines de rectificar el precio mínimo de la subasta.

Consecuentemente, el 29 de junio de 2021, se expidió una *Orden* en la cual se adujo que, revisado el expediente, "no surge del mismo que se haya acreditado que de conformidad con la Regla 51.7 (a) de Procedimiento Civil, se haya dado publicidad al aviso de subasta "por espacio de dos (2) semanas en tres (3) lugares públicos del municipio en que ha de celebrarse dicha venta, tales como la alcaldía, el tribunal y la colecturía...[...] La declaración jurada firmada por el señor Julio Estrada Santana, con fecha de 12 de agosto de 2016, no certifica cumplimiento con la publicación del aviso por espacio de dos (2) semanas, según requiere nuestro ordenamiento"".[14] En la misma, se concedió un término de veinte (20) días para acreditar si se cumplió o no a cabalidad con la Regla 51.7 de las de Procedimiento Civil de 2009. Ante esta situación, el 17 de agosto de 2021, el **BPPR** presentó *Moción en Cumplimiento de Orden* acompañada de *Declaración Jurada* del señor Julio Estrada Santana para acreditar el cumplimiento de la Regla 51.7 (a) de las de Procedimiento Civil de 2009.[15]

Más tarde, el 12 de octubre de 2021, el **BPPR** presentó *Moción en Cumplimiento de Orden* acompañada de *Declaración Jurada* del señor Julio Estrada Santana para acreditar el cumplimiento de la Regla 51.7 (a) de las de Procedimiento Civil de 2009.[16] El 9 de noviembre de 2021, se dictaminó Orden

---

[14] Apéndice del *Recurso de Certiorari,* pág. 66.

[15] *Id.,* págs. 67– 69. En la precitada *Declaración Jurada,* se acreditó: "[m]i trámite como diligenciante de dichos documentos era colocar los mismos en tres (3) lugares para que personas interesadas y/o público en general pudiera tener el aviso y acceso a la información de las subastas por espacio de dos (2) semanas consecutivas... [...] El día 11 de agosto de 2016 los mismos fueron publicados en los siguientes lugares: a. Tribunal de Caguas b. Alcaldía de Caguas notificando a Yamaris Díaz c. Colecturía de Caguas notificando a Nilsa Caraballo...[...] presto esta declaración jurada post subasta para certificar y reafirmar que cumplí con los requisitos de la Regla 57.1 de Procedimiento Civil el día 11 de agosto de 2016 y en cumplimiento de la orden emitida por este Honorable Tribunal el 29 de junio de 2021".

[16] *Id.,* págs. 71- 73. Esta *Declaración Jurada* atestiguó "[m]i trámite como diligenciante de dichos documentos era colocar los mismos en tres (3) lugares para que las personas

exteriorizando: "[d]el lenguaje de la declaración jurada no surge claramente si- en efecto- el emplazador está acreditando que los edictos se mantuvieron publicados por espacio de dos (2) semanas, de conformidad con la Regla 51.7 de Procedimiento Civil".[17]

Luego de varios tramites, el 31 de enero de 2022, el **BPPR** presentó *Urgente Solicitud de Vista Evidenciaria sobre Ejecución de Sentencia*.[18] Entonces, se pautó audiencia para el para el 6 de abril de 2022. Empero, el **BPPR** confrontó dificultades para citar a las personas que en el 2016 gestionaron la publicación de los edictos de subasta. Entre ellas, la señora Yamaris Díaz, empleada de la Alcaldía de Caguas; la señora Lisa Caraballo, empleada de la Colecturía de Caguas; y el señor Julio Estrada Santana, emplazador. Al respecto, el 25 de marzo de 2022, el **BPPR** presentó *Urgente Solicitud de Orden* en la cual peticionó la recalendarización de la audiencia pautada para el 6 de abril de 2022. El 8 de junio de 2022, el **BPPR** presentó su *Solicitud de Determinación Judicial*.[19] En síntesis, interpeló que se enmendara *nunc pro tunc* la *Orden de Confirmación de Venta Judicial* prescrita el 3 de noviembre de 2017.

Subsiguientemente, el 30 de junio de 2022, el **BPPR** compareció a la audiencia y notificó que el señor Julio Estrada Santana no pudo ser localizado en la jurisdicción de Puerto Rico.

Finalmente, el 3 de octubre de 2022, se formuló la *Resolución* impugnada que, en lo pertinente, detalla:

> [...] En el presente caso se acreditó la colocación en tres (3) sitios públicos, pero no que estuvieron ubicados por espacio de dos (2) semanas. Nótese que la Regla 51.7 (a), supra, no solo

---

interesadas y/o público en general pudiera tener revisar el aviso y tener el acceso a la información de las fechas, predios y precios de las subastas por espacio de dos (2) semanas consecutivas... [...] El día 11 de agosto de 2016 se notificó que los mismos se mantuvieran publicados por espacio de dos (2) semanas consecutivas según lo dispone la regla 51.7 de Procedimiento Civil en los siguientes lugares: a. Tribunal de Primera Instancia Sala Superior de Caguas b. Alcaldía del Municipio de Caguas notificando a Yamaris Díaz c. Colecturía del Municipio de Caguas notificando a Nilsa Caraballo...[...] presto esta declaración jurada post subasta para certificar y reafirmar que cumplí con los requisitos de la Regla 57.1 de Procedimiento Civil el día 11 de agosto de 2016 y en cumplimiento de la orden emitida por este Honorable Tribunal el 30 de agosto de 2021".
[17] *Id*., págs. 74.
[18] *Id*., págs. 75- 77.
[19] *Id*., págs. 83- 90.

manda a la colocación del aviso sino, también, a la publicación por espacio de dos (2) semanas, lo cual no pudo acreditarse por la parte demandante, a pesar de haberse señalado una vista evidenciaria para el 30 de junio de 2022.

Insatisfecho, el 7 de noviembre de 2022, el **BPPR** presentó ante este tribunal revisor un *Recurso de Certiorari.* En su escrito, esgrimió el(los) siguiente(s) error(es):

Erró el TPI al decretar la Resolución del 3 de octubre de 2022 toda vez que: erró el TPI al determinar en su Resolución que BPPR no había podido certificar el cumplimiento con la Regla 51.7, *supra*, específicamente sobre la publicidad del edicto de subasta por dos semanas consecutivas en tablones de expresión públicos.

El 8 de noviembre de 2022, intimamos *Resolución* en la cual, entre otras cosas, concedimos un plazo de diez (10) días para mostrar causa, por la cual, no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado. Al día de hoy, **ALL IN ONE MEDICAL SERVICES, INC.** y **JOSEFINA LÓPEZ SÁNCHEZ** no han comparecido.

Evaluado concienzudamente el expediente del caso y sin contar con la comparecencia de **ALL IN ONE MEDICAL SERVICES, INC.** y **JOSEFINA LÓPEZ SÁNCHEZ**, nos encontramos en posición de resolver. A continuación, exponemos las normas de derecho pertinentes a la controversia planteada.

- II -

– A – *Certiorari*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial.[20] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[21]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[22]

---

[20] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[21] *Íd.*
[22] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).

Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[23]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[24] La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[25] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia. [26]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones (Reglamento).[27]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[28] Para ello, la Regla 40 de nuestro

---

[23] *Íd.*
[24] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[25] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[26] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra; McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[27] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra.*
[28] *Íd.*

Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[29]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[30] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[31] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*. La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[32]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[33] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho

---

[29] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[30] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).
[31] *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).
[32] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. de Caguas v. JRO Construction, supra*.
[33] *García v. Asociación*, 165 DPR 311, 322 (2005).

sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[34]

### - B - *Regla 51.7 de las de Procedimiento Civil de 2009*

La Regla 51.7 de las de Procedimiento Civil de 2009 sobre ventas judiciales instaura la manera en que se llevará a cabo dicho procedimiento.[35] A estos efectos, especifica:

> **(a) Aviso de venta**. Antes de verificarse la venta de los bienes objeto de la ejecución, ésta deberá darse a la publicidad por espacio de dos (2) semanas mediante avisos por escrito visiblemente colocados en tres (3) sitios públicos del municipio en que ha de celebrarse dicha venta, tales como la alcaldía, el tribunal y la colecturía. Dicho aviso será publicado, además, mediante edictos dos (2) veces en un diario de circulación general en el Estado Libre Asociado de Puerto Rico, y por espacio de dos (2) semanas consecutivas, con un intervalo de por lo menos siete días entre ambas publicaciones. Copia del aviso será enviada al deudor o deudora por sentencia y a su abogado o abogada vía correo certificado con acuse dentro de los primeros cinco (5) días de publicado el primer edicto, siempre que haya comparecido al pleito. Si el deudor o la deudora por sentencia no comparece al pleito, la notificación será enviada vía correo certificado con acuse a la última dirección conocida. En todos los casos en que se plantee que la parte promovente de un procedimiento de ejecución de sentencia no ha cumplido con alguno de los requisitos de esta regla, el tribunal, a solicitud de parte, celebrará una vista para resolver la controversia planteada. El aviso de venta describirá adecuadamente los bienes que se venderán y hará referencia sucintamente, además, a la sentencia que se satisfará mediante dicha venta, con expresión del sitio, el día y la hora en que se celebrará la venta. Si los bienes son susceptibles de deterioro, el tribunal, a solicitud de parte, podrá reducir el término de publicación del aviso a menos de dos (2) semanas. Será nula toda venta judicial que se realice sin cumplir con el aviso de venta en la forma indicada, sin perjuicio de la responsabilidad de la parte que promueva la venta sin cumplir con tal aviso.[36]

Ahora bien, la venta judicial supone que hay bienes del deudor sujetos a custodia judicial (embargo) o sujetos a gravámenes voluntarios como lo es la hipoteca.[37] Así, los pasos que han de seguirse para la venta judicial son: (1) el alguacil expedirá un aviso de venta escrito con el siguiente contenido: (a) una descripción adecuada de los bienes a ser vendidos; (b) una relación sucinta de los términos de la sentencia a ser satisfecha; (c) el sitio o lugar en

---

[34] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[35] 32 LPRA Ap. V, R. 51.7.
[36] *R & G v. Sustache*, 163 DPR 491 (2004) (Sentencia).
[37] R. Hernández Colón, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil*, 6ta edición, (2017), pág. 645.

donde se celebrara la venta judicial; (d) la fecha y hora en que se celebrará la venta judicial; y (2) la publicación del aviso de la venta. El aviso debe publicarse: (a) **colocándolo visiblemente por espacio de dos (2) semanas en tres (3) sitios públicos del municipio donde se ha de celebrar la subasta**, y (b) debe publicarse dos (2) veces en un periódico de circulación general.[38]

El profesor Rafel Hernández Colón comenta que el procedimiento ha de cumplirse rigurosamente so pena de nulidad de la venta judicial; y en los casos de ejecución de hipoteca, además de acatar las Reglas de Procedimiento Civil, se debe observar las disposiciones de la *Ley Hipotecaria*.[39]

Nuestra Alta Curia ha reiterado que la notificación y publicación de los avisos de venta judicial es un requisito fundamental íntimamente ligado al debido proceso de ley.[40] Por ende, la consecuencia de no publicar o notificar el aviso de venta en la forma indicada en la ley conlleva la nulidad de la venta judicial.[41] En otras palabras, las formalidades para efectuar la venta judicial tienen que cumplirse estrictamente so pena de nulidad de la venta. Ello es así pues la falta de una notificación oportuna y adecuada con posterioridad a la sentencia—al igual que en toda etapa del proceso judicial— menoscaba el derecho de la parte afectada a cuestionar el dictamen adverso, violando así las garantías al debido proceso de ley.[42] Sobre la divulgación del aviso, **la acreditación puede hacerse mediante declaraciones juradas de la persona que fijó los avisos en los sitios públicos o la certificación del alguacil si este lo llevó a cabo y de un oficial del periódico donde se hizo la publicación es suficiente**.[43]

---

[38] *Id.*, pág. 646. Citando a *R & G v. Sustache, supra.*
[39] R. Hernández Colón, *op cit*, pág. 645.
[40] *Lincoln Savs. Bank v. Figueroa*, 124 DPR 388 (1989); *Dapena Quiñones v. Vda. de Del Valle*, 109 DPR 138, 141 (1979).
[41] *Atanacia Corp. v. J. M. Saldaña, Inc.*, 133 DPR 284 (1993); *Lincoln Savs. Bank v. Figueroa*, *supra*, pág. 395.
[42] *R & G v. Sustache, supra*, pág. 506.
[43] *R & G v. Sustache, supra*. (énfasis nuestro).

La parte promovente de la venta judicial deberá realizar los trámites necesarios, con cierto grado de esfuerzo, para procurar la dirección del deudor demandado al realizar la notificación. Ello no implica que la parte promovente de la venta tenga que realizar esfuerzos extraordinarios; tampoco viene obligado a establecer que la parte demandada efectivamente recibió la notificación enviada.[44] Lo importante es que se remita la notificación a una dirección razonablemente calculada, a la luz de las circunstancias del caso, para permitir al dueño conocer de la subasta y ejercitar sus derechos.[45]

Es menester señalar que cuando se trata de una venta judicial, no existe una presunción a favor de que todo se ha efectuado en forma adecuada por el Alguacil a cargo. Como resultado, los involucrados no pueden descansar en la premisa de que todo se ha hecho en la forma adecuada, por lo que incumbe al que compra probar que se ha observado la ley.[46]

Ante el planteamiento de incumplimiento con el procedimiento requerido por ley para la publicación y notificación del aviso de subasta, el tribunal deberá considerar, apreciar y adjudicar si se han cumplido o no con todos los requisitos exigidos por ley para la validez de la subasta.[47] Es decir, en todos los casos en que se plantee que la parte promovente de un procedimiento de ejecución de sentencia no haya cumplido con alguna de las exigencias de esta regla, el tribunal, a solicitud de parte, celebrará una vista para resolver la controversia planteada.[48]

### - C - *Regla 49.1 de las de Procedimiento Civil de 2009*

La Regla 49.1 de las de Procedimiento Civil de 2009 le confiere autoridad al tribunal para corregir, en cualquier momento, por iniciativa propia o mediante solicitud de cualquier parte, los errores de forma en sus

---

[44] *R & G v. Sustache, supra*, pág. 504.
[45] *Id*. Véase, además, *Rivera v. Jaume*, 157 DPR 562 (2002); *Granados v. Rodríguez Estrada II*, 124 DPR 593, 610-611 (1989).
[46] *C.R.U.V. v. Registrador*, 117 DPR 662, 669 (1986).
[47] *Ponce Federal Savings v. Gómez*, 108 DPR 585 (1979). (énfasis nuestro).
[48] 32 LPRA Ap. V, R. 51.7.

sentencias, órdenes u otras partes del expediente y los que aparezcan en éstas por inadvertencia u omisión.[49] Así, se ha implantado que los errores de forma son los que ocurren "por inadvertencia u omisión, o por errores mecanográficos, o que no puedan considerarse van a la sustancia de la sentencia, orden o resolución, ni que se relacionan con asuntos discrecionales".[50] Nuestra jurisprudencia ha reconocido "la facultad inherente que tienen los tribunales de corregir los errores de forma que aparezcan de sus récords".[51] Pueden corregirse fechas equivocadas, nombres o apellidos mal escritos, **cantidades equivocadas**, cómputos matemáticos erróneos y descripciones de propiedad equivocadas.[52]

Ahora bien, no procede corregir un error al amparo de la precitada disposición cuando éste constituye un error de derecho o cuando existe una controversia que trate sobre una interpretación de ley.[53] Para determinar si procede o no una enmienda al amparo de la Regla 49.1 de las de Procedimiento Civil de 2009, "[e]l criterio rector es que la cuestión a ser enmendada no conlleve la alteración de un derecho sustantivo, sino la corrección de una mera inadvertencia".[54]

- III -

El **BPPR** particulariza que erró el foro primario al determinar que no pudo certificar el cumplimiento con la Regla 51.7 (a) de las de Procedimiento

---

[49] 32 LPRA Ap. V, R. 49.1. Hernández Colón, *op cit*, pág. 464. A modo de ejemplo, nuestro más alto foro ha señalado que se puede utilizar la Regla 49.1 de las de Procedimiento Civil de 2009, *supra*, "para corregir los errores de forma que aparezcan de los expedientes del tribunal"; para "corregir errores del secretario del tribunal al anotar la sentencia"; "para adicionar al reconocimiento del derecho de propiedad la condena de entregar los frutos"; "para dar una descripción completa en la sentencia de la propiedad disputada"; y, "para conceder costas en la sentencia cuando éstas se reconocen en la opinión". *S.L.G. Coriano-Correa v. K-mart Corp.*, 154 DPR 523, 530 (2001). Además, "[s]i el derecho a cierto remedio está claramente sostenido por el expediente, la omisión en concederlo es subsanable, por ser error de forma, mediante enmienda *Nunc Pro Tunc*". *Íd.*, citando a *Security Ins. Co. v. Tribunal Superior*, 101 DPR 191 (1973).
[50] *Plan Salud Unión v. Seaboard Sur. Co.*, 182 DPR 714 (2011); *Vélez v. A.A.A.*, 164 DPR 772 (2005); *S.L.G. Coriano-Correa v. K-mart Corp., supra*.
[51] *Security Insurance v. Tribunal Superior*, 101 DPR 191, 203- 204 (1973).
[52] *León v. Rest. El Tropical*, 154 DPR 249 (2001).
[53] *Vélez v. A.A.A., supra*, pág. 792.
[54] 32 LPRA Ap. V, R. 49.1. *Otero Vélez v. Schroder Muñoz*, 200 DPR 76, 92 (2018).

Civil de 2009. En específico, sobre la publicidad del edicto de subasta por dos (2) semanas consecutivas en tablones de expresión públicos.

En nuestro caso, se desprende del expediente que después de que la primera subasta fuese declarada desierta, el 7 de diciembre de 2016, en una segunda subasta el **BPPR** fue el único licitador. La alguacil anunció dicha oferta en voz alta en tres (3) ocasiones y al no ser mejorada la oferta, se procedió a adjudicar el inmueble por la cantidad de $66,666.67. Subsiguientemente, el 8 de diciembre de 2016, se suscribió una escritura pública sobre *Venta Judicial* ante notario público de la cual aparece que el precio de adjudicación en pública subasta fue por $66,666.67.

El 29 de noviembre de 2016, el **BPPR** presentó su moción *Al Expediente Judicial* con la cual adjuntó copia de varios documentos. Entre ellos, una *Declaración Jurada* datada el 12 de agosto de 2016 y firmada por el señor Julio Estrada Santana quien asintió que:

> [E]l 11 de agosto de 2016, fueron notificados *Declaración Jurada* los Avisos de Subasta en los siguientes lugares:
> a. Tribunal de Caguas.
> b. Alcaldía de Caguas, notificando dicho Aviso a Yamaris Días. c. Colecturía de Caguas, notificando dicho Aviso de Subasta de Nilsa Caraballo, Guardia de Seguridad.
> [P]restó la presente Declaración Jurada a los fines de garantizar que cumplió con los requisitos establecidos por las Reglas de Procedimiento Civil vigente y para cualquier otro fin legal.[55]

El 3 de noviembre de 2017, se dispuso una *Orden de Confirmación de Adjudicación* en la cual se ratificó la venta en pública subasta y adjudicación del bien inmueble a favor de **BPPR**. Meses después, en agosto de 2018, el **BPPR** vendió el inmueble a *Interior Contractor Corporation* mediante escritura sobre *Compraventa*.

No es hasta abril de 2021, cuando se emite la *Carta de Notificación* por el Registro de la Propiedad en la cual se señala la discrepancia del precio existente entre la *Orden de Confirmación de Adjudicación* y la escritura sobre *Compraventa*. Ante este proceder, el **BBPR** solicitó una enmienda *nunc pro*

---

[55] Apéndice del *Recurso de Certiorari,* pág. 36.

*tunc* a la *Orden de Confirmación de Adjudicación* a los efectos de rectificar el error del precio de venta judicial. Ante la determinación del 29 de junio de 2021, el **BBPR** presentó dos (2) escritos acompañados de declaraciones juradas del señor Julio Estrada Santana quien acreditó haber tramitado la colocación y publicación del *Aviso de Subasta* en los tablones de edictos del Tribunal de Primera Instancia, Sala Superior de Caguas; Alcaldía del Municipio de Caguas y Colecturía del Municipio de Caguas. Esto es, el 3 de agosto de 2021, en la *Declaración Jurada* infrascrita por el señor Julio Estrada Santana se atestó que:

> El día 11 de agosto de 2016 recibí los edictos de subasta expedidos y relacionados al caso de epígrafe. Mi trámite como diligenciante de dichos documentos era colocar los mismos en tres (3) lugares para que personas interesadas y/o público en general pudiera tener el aviso y acceso a la información de las subastas por espacio de dos (2) semanas consecutivas.[56]

Asimismo, en la *Declaración Jurada* fechada 24 de septiembre de 2021, el señor Julio Estrada Santana atestiguó:

> [R]ecibí los edictos de subasta expedidos y relacionados al caso de epígrafe. Mi trámite como diligenciante de dichos documentos era colocar los mismos en tres (3) lugares para que las personas interesadas y/o el público en general pudiera revisar el aviso y tener el acceso a la información de las fechas, predios y precios de las subastas por dos (2) semanas consecutivas.
> [S]e mantuvieron publicados por espacio de dos (2) semanas consecutivas según lo dispone la regla 51.7 de Procedimiento Civil en los siguientes lugares...[...]..[57]

En consecuencia, en el apéndice no encontramos alguna indicación que nos conduzca a inferir que el proceso de venta judicial efectuado durante el año en el 2016 se incumplió con los criterios establecidos en la Regla 51.7 (a) de las de Procedimiento Civil de 2009. En lo pertinente, que no se haya publicado o colocado el aviso en los tres (3) lugares públicos dentro del municipio por dos (2) semanas consecutivas. Nuestro ordenamiento jurídico es claro y asiente a que la acreditación de la publicación del aviso de subasta puede realizarse mediante declaración jurada de la persona quien fijó los avisos en las localidades públicas; la certificación del alguacil o de un oficial

---

[56] Apéndice del *Recurso de Certiorari*, pág. 68.
[57] *Íd.*, pág. 72.

del periódico donde se hizo la publicación. Ante ello, precisamos que le asiste la razón a **BPPR**.

Como resultado, forzosamente colegimos que se cumplió con todos los criterios de la Regla 51.7 de Procedimiento Civil; la venta judicial se efectuó conforme a derecho; y procede enmendar *nunc pro tunc* la *Orden de Confirmación de Adjudicación* para rectificar el error sobre la cantidad equivocada del precio de adjudicación de la subasta al amparo de la Regla 49.1 de Procedimiento Civil.

### - IV -

Por los fundamentos expuestos, ***expedimos*** el auto de *Certiorari* interpuesto el 7 de noviembre de 2022; en consecuencia, ***revocamos*** la *Resolución* dictada el 3 de octubre de 2022 por el Tribunal de Primera Instancia, Sala Superior de San Juan; y ***requerimos*** al foro primario efectuar la enmienda *nunc pro tunc* de la *Orden de Confirmación de Adjudicación* fechada 3 de noviembre de 2017 para enmendar *nunc pro tunc* la cuantía por la cual fue adjudicada la propiedad en la venta judicial o subasta.

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia, Sala Superior de San Juan, puede proceder de conformidad con lo aquí resuelto, sin que se tenga que esperar por el recibo de nuestro mandato.[58]

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[58] 4 LPRA Ap. XXII-B R. 35. La Regla 35 (A)(1) del Reglamento del Tribunal de Apelaciones enuncia: "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, salvo que el Tribunal de Apelaciones disponga lo contrario." 4 LPRA Ap. XXII-B R. 35.